**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Brandon C. Dickson, | | Case No. 25-cv-4307 (PAM/DTS) |
| | Plaintiff, | |
| vs. | | **HENNEPIN DEFENDANTS'** |
| | | **REPLY MEMORANDUM OF LAW** |
| Jacob R. Spies, et al., | | **IN SUPPORT OF** |
| | Defendants. | **MOTION TO DISMISS** |

The Hennepin Defendants[1] articulated dispositive legal flaws with the Complaint supporting their motion to dismiss. Dickson's opposition does not confront these flaws, and doubles down on mischaracterizing what video demonstrates was a routine traffic stop. Dickson was driving without license plates, insurance, proof of ownership, or fully operational taillights. He was briefly detained, subjected to a brief safety search, and released without citation. There was no constitutional violation here, and Dickson cannot provide authority suggesting otherwise.

The Court should dismiss Dickson's claims against the Hennepin Defendants.

**ARGUMENT**

**1.    Qualified Immunity Applies.**

"Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "A right is clearly established

---

[1]    Terms have the meanings assigned to them in Hennepin Defendants' initial memorandum of law in support of the motion for summary judgment ("Memo").

1

when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. A right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Id.* (internal quotations omitted).

Dickson fails to meet his burden to show that his theory of liability is supported by clearly established precedent. He cites just two cases; both of which are insufficient under *Zorn*. Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss and for Judgment on the Pleadings (ECF # 75) (the "Opposition."), 33.

The first, *Chambers v. Pennycock*, 641 F.3d 898 (8th Cir. 2011), is offered for the proposition that Wong and Majeski should have known that their alleged conduct would have "expos[ed] them to an excessive force claim." Opposition, 33. Dickson omits that the Eighth Circuit <u>granted</u> qualified immunity in *Chambers*. 641 F.3d at 902-903. The officers in question were alleged to have used excessive force by taking down, kicking, and stepping on the plaintiff, but he suffered only *de minimis* injuries. *Id.*, 902-903. The court granted immunity, determining that at the time of the incident it was not clearly established that *de minimis* injuries could be the basis for an excessive force claim. *Id.*, 908. Although, in doing so, the Eighth Circuit ultimately rejected any "constitutional rule that turns on the arrestee's degree of injury," *Chambers* identifies no conduct as a violation of a clearly established rights and cannot, therefore, stand as notice for purposes of qualified immunity. *Zorn*, 146 S. Ct. at 930 (rejecting precedent as inadequate for purposes of clearly establishing a constitutional violation because it "did not hold that any of those actions violated the Fourth Amendment").

Dickson's second case is *Arizona v. Gant*, 556 U.S. 332 (2009), offered as clearly establishing that the search of Dickson's truck violated his rights. Opposition, 33. However, in *Gant*, the search occurred after the driver had been arrested and would have no foreseeable access to the vehicle's interior. *Gant*, 466 U.S. at 335. Here, the search was conducted immediately before Wong released Dickson to his truck. Dickson had indicated that the truck might contain a weapon and became agitated at being detained, making it reasonable to believe that an accessible weapon could become a danger once he was released to his truck. *U.S. v. Stewart*, 631 F.3d 453, 458-59 (8th Cir. 2011). Under these circumstances, established precent clearly allows a search. *See, e.g., U.S. v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (citing *Michigan v. Long*, 463 U.S. 1032, 1052 (1983)) (upholding a vehicle search where officers had reason to think it might contain a weapon).

Dickson makes no attempt to offer authority showing that a brief visual search of his engine compartment violated clearly established law. Opposition, 33. Indeed, under these circumstances, it does not. *Cronin*, 982 F.3d at 1197-1198 (mistakes of fact do not negate probable cause).

At best, *Chambers* and *Gant* can only be applied to this matter on the level of "general principles," rather than the required "high degree of specificity" such that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Zorn*, 146 S. Ct. at 930 (quotation omitted). Dickson has failed to meet his burden. *Miller-Fields v. Londregan*, 755 F. Supp. 3d 1122, 1130 (D. Minn. 2024) (noting that it is plaintiff's burden to find clearly established precedent on a motion to dismiss).

Dickson further fails to oppose qualified immunity on several claims: the initial stop, Wong's pat-down search, the length of his detention, and any purported First Amendment retaliation. *See, generally,* Opposition. Wong and Majeski raised qualified immunity as a defense to all § 1983 claims, and Dickson's failure to address these claims waives them. *Tate v. Scheidt*, No. 15-3115 (WMW/JSM), 2016 WL 7155806, at *6 (D. Minn. Oct. 7, 2016), *report and recommendation adopted*, No. 15-CV-3115 (WMW/BRT), 2016 WL 7175593 (D. Minn. Dec. 7, 2016) (dismissing claims for failure to address qualified immunity argument raised in a motion to dismiss).

As set forth below, the Complaint also fails the first prong of qualified immunity analysis: Dickson does not plausibly allege that Wong or Majeski violated a constitutional right in this case. *Wesby,* 538 U.S. at 62-63. In short, Wong and Majeski are entitled to qualified immunity on every claim brought here. The Complaint should be dismissed.

## 2.     The *Monell* Claim Fails.

Dickson alleges no concrete policy or practice. Compl., ¶ 87. A *Monell* claim based on custom requires (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct"; (2) "deliberate indifference to or tacit authorization of such conduct" by "policymaking officials after notice"; and (3) an injury caused by that custom. *Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024).

Instead, Dickson offers mere conclusions and labels. *See* Compl. ¶ 86; Opposition, 37 (relying on the presence of a "bevy of officers" as implicitly indicating an underlying "training, custom, or plan" of unconstitutional conduct). Even if such conclusory assertions could sustain a *Monell* claim—they cannot—the "isolated incident" alleged here "cannot,

4

as a matter of law, establish a municipal policy or custom creating liability under § 1983."
*Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). Dickson has failed to allege a
pattern of misconduct, the central premise of a *Monell* claim. *Parrish v. Ball*, 594 F.3d 993,
997 (8th Cir. 2010). Accordingly, Dickson's *Monell* claim must be dismissed. *See Brenizer
v. Cnty. of Sherburne*, No. 21-CV-1301 (DSD/TNL), 2022 WL 1110203, at *8 (D. Minn.
Feb. 1, 2022), *report and recommendation adopted*, No. CV 21-1301(DSD/TNL), 2022
WL 703212 (D. Minn. Mar. 9, 2022).

**3.      Dickson Failed to State a Claim Under Section 1983.**

      A.      Dickson's claim for unreasonable search and seizure fails.

            *i.      Wong and Majeski had probable cause to pull Dickson over.*

Dickson also argues that it would have been improper to issue a citation for his
broken taillights, due to the truck's remaining working lights. Opposition, 6. Dickson is
simply incorrect. *See*, Minn. Stat. § 169.57, subd. (3) (requiring equipped stop and signal
lamps to be maintained in good working condition "at all times"); *see also, e.g., United
States v. Scott*, No. CR 22-136 (PJS/BRT), 2022 WL 17345236, at *5 (D. Minn. Nov. 9,
2022), *report and recommendation adopted*, No. CR 22-136 (PJS/BRT), 2022 WL
17343386 (D. Minn. Nov. 30, 2022) (finding probable cause for a traffic stop based in part
on a single inoperable passenger-side brake light, via Minn. Stat. § 169.57, subd. (3)).

In any event, Dickson concedes that his vehicle did not have a standard license plate
and that Wong and Majeski did not see his temporary registration until they stopped and
approached his truck. Opposition, 5. This potential violation was, therefore, independent
probable cause for the stop. *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017).

> ## ii.   *Dickson's detention and pat down were proper.*

Because Dickson was subject to arrest, it was reasonable for Wong to make lesser impositions on Dickson's freedom, like asking him to step out of the vehicle, conducting a safety search, and cuffing him. *See, e.g., Rangel v. Satele*, No. 23-cv-2535 (ECT/SGE), 2025 WL 1179791, at \*6 (D. Minn. Apr. 23, 2025); *Royster v. Nichols*, 698 F.3d 681, 691 (8th Cir. 2012).

Dickson contends that absent a formal demand for proof of insurance, Dickson committed only a petty misdemeanor and, therefore, arrest would have been improper. Opposition, 7-8. This is a specious argument. Dickson was asked if he had insurance and he admitted that he did not. (Wong BC 05:40-05:48; Majeski BC 05:42-05:50) (Wong: "Do you have insurance on it yet?" Dickson "No, not yet.") Driving without insurance is a misdemeanor, subjecting Dickson to arrest. Minn. Stat. § 169.791, subd. 2 ("If the driver does not produce the required proof of insurance upon the demand of a peace officer, the driver is guilty of a misdemeanor.").

Dickson fails to allege improper search and seizure related to being cuffed, placed in custody and subjected to Wong's pat-down search. This claim should be dismissed.

### B.    Dickson's use of force claim fails.

Dickson confirms this claim is based on the force used to detain him in Wong's squad. Opposition, 29.[2] As set forth in the Hennepin Defendants' principal brief, Wong

---

[2]    Dickson admits that Majeski did not use force but claims that he is liable because he "acted in concert" with other Defendants. Opposition, 29. However, section 1983 claims cannot be sustained through mere "guilt by association." *Smith v. City of Mpls.*, 754 F.3d 541, 547-48 (8th Cir. 2014).

had probable cause to arrest Dickson and, as the video shows, all force used was *de minimis* and incidental to his detention. Memo, 21-32. As such, no use of force claim can lie. *See, e.g., Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (Law enforcement officers "undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency.").

In opposition, Dickson cites *Chambers* and *El-Ghazzawy* v. *Berthiaume*, 636 F.3d 452 (8th Cir. 2011). But Dickson's appeal to *Chambers* is misplaced, where the gratuitous force in that case involved allegations that plaintiff was kicked on the ground while restrained and offering no resistance, choked and kicked further while being transported to a hospital on an erratic journey that roughly jerked him around. *Chambers*, 641 F.3d at 907–08. Dickson makes no such claims. *See generally*, Complaint. Similarly, in *El-Ghazzawy*, the Eighth Circuit held that cuffing a non-threatening individual without probable cause to arrest can be a violation of the Fourth Amendment. *El-Ghazzawy*, 636 F.3d at 457. Here, Dickson was potentially armed, definitely agitated, and subject to probable cause; *El-Ghazzawy* does not apply. Dickson has failed to allege an unreasonable use of force. This claim should be dismissed.

C.      The search of Dickson's truck was proper.

Majeski and Wong briefly searched the front passenger area of Dickson's truck and opened the engine compartment. (Majeski BC 07:19-12:49). It is reasonable to search a vehicle for weapons before releasing an individual back into that vehicle. *Stewart*, 631 F.3d at 458-59. Majeski's misunderstanding that Dickson had admitted to possessing a

7

controlled substance does not necessarily render the search categorically improper. *Cronin v. Peterson*, 982 F.3d 1187, 1197-1198 (8th Cir. 2020).

Dickson claims that no safety search of the truck was warranted because "Dickson expressly and honestly denied having any weapons"—a statement that Dickson himself contradicted moments later, admitting that he might have a carpenter's knife, but could not say where it was. Opposition, 19; (Wong BC 06:30-6:35.) Dickson asserts that because this knife was not found in his pockets, Wong and Majeski could not have reasonably feared it was in the vehicle. Opposition, 19 (asserting that there was no weapon because "a carpenter knife, a tool of his trade, could possibly be in [Dickson's] pocket, and it was not").

Dickson is wrong on the facts and the law. Even a suspicion based solely on "furtive gestures" and "nervous behavior" can support a safety search. *Stewart*, 631 F.3d at 458-59. Here, Wong and Majeski had an affirmative statement that a weapon might be present, from an increasingly agitated individual. This pattern falls well within *Stewart*. *Id*.

As before, Dickson's proffered authority is unavailing. The Opposition relies on *Gant*, even though vehicle in *Gant* was searched after the driver had been arrested and could have no foreseeable access to its interior. *Gant*, 466 U.S. at 335. Here, Dickson was released to his truck, where any accessible weapon could pose a threat.

Finally, although Majeski was mistaken in his understanding that the scope of the search included controlled substances, "[a]n act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) (citation omitted).

D.    Dickson's Claim for First Amendment Retaliation Fails.

As discussed above, Dickson was subject to arrest for driving without insurance. Therefore, Wong's brief detention of Dickson, and the *de minimis* force used to accomplish that detention, was objectively supported by probable cause.[3] *Nieves*, 587 U.S. at 398 ("[T]he motive must *cause* the injury" such that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive") (emphasis original); *Just v. City of St. Louis, Missouri*, 7 F.4th 761, 768 (8th Cir. 2021) ("Like a Fourth Amendment claim for a wrongful arrest, a First Amendment retaliatory arrest claim is defeated by a showing of probable cause (or arguable probable cause)."). This claim should be dismissed.

E.    Dickson's Claim for Excessive Force Fails.

Dickson alleges a civil conspiracy under § 1983 or § 1985—though it remains unclear which—and abandons any common law theory. *See* Opposition, 34 (defending this claim based on federal law only). However, such a claim must be "allege[d] with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Torres v. City of St. Louis*, 39 F.4th 494, 506 (8th Cir. 2022) (quoting *Kelly v. City of Omaha*, 813 F.3d 1070, 1077-1078). Dickson fails to meet this requirement—he raises no concrete allegations regarding the formation of a conspiracy. Compl. ¶ 80 (asserting simply that Defendants "conspired with one another").

---

[3]    To the extent Dickson relies solely on a conclusory allegation he was "slammed" into Wong's squad in retaliation for his protest of his detention, the video shows this was *de minimis* and therefore not sufficient to sustain that claim. Opposition, 27; (Wong BC 07:16-21); s*ee, e.g., Doering v. Reed*, No. 6:15-CV-06093, 2016 WL 3148642, at *3 (W.D. Ark. Apr. 29, 2016), *report and recommendation adopted sub nom. Doering v. Reed*, No. 6:15-CV-6093, 2016 WL 3162137 (W.D. Ark. June 3, 2016) (collecting cases).

Dickson's cited authority—on theme—does not suggest otherwise. That case, *White v. McKinley*, 519 F.3d 808, 816 (8th Cir 2008), stands for the proposition a plaintiff may use circumstantial evidence to survive summary judgement. 519 F.3d at 816. Dickson has failed to satisfy the pleading standard for his conspiracy claim, and it must be dismissed. *Kelly*, 813 F.3d at 1078 (dismissing § 1983 conspiracy claim where no "meeting of the minds" was alleged).

### 4.     Dickson has abandoned his other claims.

Dickson has expressly abandoned his putative claim under *respondeat superior*, as well as his request for prospective injunctive relief. Opposition, 38 (withdrawing his request for injunctive relief despite heading claiming that facts were adequately pled).

### CONCLUSION

The Court should dismiss the Complaint with prejudice.

MARY F. MORIARTY
Hennepin County Attorney

Dated April 28, 2026

By: /s/ *Matthew Messerli*
Matthew L.R. Messerli (0403677)
(612) 348-0727
matthew.messerli@hennepin.us
Leaf McGregor (0389140)
leaf.mcgregor@hennepin.us
Assistant Hennepin County Attorneys
13-A Government Center, MC-137
300 South Sixth Street
Minneapolis, MN, 55416

*Attorneys for the Hennepin Defendants*