# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Brandon C. Dickson,

        Plaintiff,

vs.

Jacob R. Spies, Richard L. Knoche, Kyle
A. Pond, John K. Biederman, Aaron J.
Pearson, Tony J. Partyka, Benjamin M.
Bauer, individually, and in their official
capacity as Minneapolis police officers;
the City of Minneapolis, and John Doe
1 and John Doe 2, individually and in
their official capacity as Hennepin
County Sheriff deputies, and Hennepin
County

        Defendants.

Case No. 25-CV-004307 (PAM/DTS)

**CITY DEFENDANTS'
REPLY MEMORANDUM**

## INTRODUCTION

Defendants Officer Jacob R. Spies, Sergeant Richard L. Knoche, Sergeant

Kyle A. Pond, Sergeant John K. Biederman, Officer Aaron J. Pearson, Sergeant

Tony J. Partyka, Sergeant Benjamin M. Bauer and the City of Minneapolis ("City

Defendants") submits this Reply Memorandum of Law in Support of their Motion

for Judgment on the Pleadings (ECF No. 52) under Federal Rules of Civil

Procedure 12(b)(5) and 12(b)(6).

## ARGUMENT

**I.      2020 HENNEPIN COUNTY STOP ASSISTANCE DID NOT VIOLATE THE FOURTH AMENDMENT**

### A. City Defendants are entitled to qualified immunity for their assistance in the 2020 stop of Plaintiff

Plaintiff argues the Hennepin County Defendants did not have probable

cause or reasonable articulable suspicion to stop Plaintiff, handcuff him or search

his vehicle. Whether that is true is not relevant to the City Defendants' motion. By

the time the City Defendants arrived the Plaintiff had already been stopped and

pulled out of the vehicle. (Doc. 62 at Ex. 5). The City Defendants had and have no

information suggesting that those decisions were unreasonable. Because they

reasonably relied on Hennepin County Defendants, they are entitled to qualified

immunity even if there was no probable cause for the stop or the vehicle search.

In *Mitchell v. Shearrer*, the defendant officer demanded the plaintiff exit his

home to talk to him about grass clippings. 729 F.3d 1070, 1072 (8th Cir. 2013). The

plaintiff refused and began to close his door. *Mitchell*, 729 F.3d at 1072. The officer

stuck his foot in the door to prevent it from closing and asked for identification.

Plaintiff refused. *Id*. Then two assisting officers arrived in separate squads and all

three officers together tried to remove the plaintiff from his home. *Id*. They

2

removed him from the home, forced him to the ground and handcuffed him. *Id.* The district court had granted summary judgment for those assisting officers and noted that when they arrived, they saw plaintiff appear to be resisting arrest, which is a criminal offense, even when the arrest is unlawful. *Mitchell v. Shearrer*, 2012 WL 943322 *7 (E.D. Mo. March 20, 2012). Further, there was no evidence the assisting officers knew or should have known the arrest was unlawful and therefore the assisting officers had probable cause to arrest the plaintiff. *Mitchell*, 2012 WL 943322 at *7. The Eighth Circuit affirmed the granting of summary judgment in favor of the assisting officers, concluding that the assisting officers were merely assisting the arresting officer in subduing the plaintiff and there was no evidence to indicate that they knew or should have known that the seizure was unlawful.  *Mitchell*, 729 F.3d at 1073.

The Hennepin County Defendants radioed for assistance of a stop of a vehicle with no license plates.  (Doc. 62, Ex. 5 at 4:40). The City Defendants did not decide to, or, actually stop Plaintiff.  By the time they arrived, Plaintiff was already stopped and removed from the vehicle.  Id. at Ex. 5 at 6:01; Ex. 6-8). Plaintiff was already being pat searched. *Id*. They arrived in the middle of an on-going stop. What they knew when they arrived was that the vehicle was stopped for not having license plates, and that the deputies decided that the Plaintiff needed to be removed, pat searched, and his vehicle searched.  Wong decided Plaintiff needed

to be handcuffed and Plaintiff began to be vocally uncooperative and raised his voice.  Plaintiff insisted that he was not going to be handcuffed. (Ex. 5 at 2:45).

In *Watkins v. Arkansas*, an officer radioed to a second officer that a black tractor was tailgating a white tractor/trailer.  725 Fed.Appx 428, 429 (8th Cir. 2018). The Eighth Circuit concluded that as to the first officer, there was a fact dispute, but as to the second officer, they affirmed the granting of summary judgment on his behalf because he stopped the black tractor that the first officer identified and there was no indication that he did not reasonably rely on the first officer's report. *Watkins*, 725 Fed.Appx at 429-430).

When the City Defendants were dispatched via Deputy Wong, they were told that he had stopped a vehicle with no plates.  (Ex. 5). That information provides probable cause to arrest. They were entitled to rely on that information in responding.  When they arrived, Plaintiff was already out of the vehicle and the deputies were searching the vehicle.  (Ex. 6-8). Both of these actions would have been reasonable for a stop for no license plates.  And City Defendants knew that additional reasons may exist based on what happened at the stop before they arrived.  Additionally, Plaintiff's behavior caused concerns.  The City Defendants were entitled to rely on the deputies' information, even if it later turned out not to be true.

4

In *Ehlers v. City of Rapid City*, Officer Hansen had ordered the plaintiff to get back onto the sidewalk. 846 F.3d 1002, 1007 (8th Cir. 2017). Officer Dirkes then arrived and Hansen directed Dirkes to arrest the plaintiff, saying, "take this guy, he's not listening." *Ehlers*, 846 F.3d at 1007. Dirkes moved toward the plaintiff and when the plaintiff did not comply with his order to put his hands behind his back twice, Dirkes executed a spin takedown maneuver and pushed the plaintiff's head into the ground. *Id.* Other officers arrived and assisted with force to get the plaintiff into handcuffs. *Id.* The Eighth Circuit noted that generally an assisting officer may rely on the probable cause determination of the arresting officer and receive qualified immunity as long as the reliance was reasonable. *Ehlers*, 846 F.3d at 1010 (citing *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005). The Eighth Circuit also noted that other circuits do not require assisting officers to have independent probable cause in order to have qualified immunity. *See Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010); *Brent v. Ashley*, 247 F.3d 1294, 1305–06 (11th Cir. 2001); *Liu v. Phillips*, 234 F.3d 55, 57–58 (1st Cir. 2000).

Like Dirkes in *Ehlers*, the City Defendants did not know what had happened before they arrived, but were entitled to rely on the Hennepin County Defendants' information. They were called there to assist, they saw that the deputies had already determined that Plaintiff needed to be handcuffed and his vehicle searched, and they were entitled to rely on that when they briefly assisted in

5

getting Plaintiff into the deputies' squad and his vehicle searched. Moreover, they heard Plaintiff refuse to obey orders to be handcuffed and resist being placed in a squad. That alone is sufficient to establish an offense. *Smith v. Rozeboom*, 108 F.4th 1064, 1070 (8th Cir. 2024).

In *Smith*, the officers had instructed the plaintiff to stay in place and put his hands behind his back because he was being detained. 1089 F.4th at 1070. But the plaintiff crossed his arms, moved around and stated that he was not being detained. *Id.* The Eighth Circuit held that those actions alone could cause a reasonable officer to believe there was probable cause to detain the plaintiff for obstructing a police officer. *Id.* Here, City Defendants witnessed Plaintiff also resist being handcuffed, being placed in a squad and verbally assert that he would not obey. It was only at this point that they touched him in an effort to ensure he got handcuffed and into the squad car.

Similarly, the decision to search Plaintiff's vehicle also was made by Hennepin Deputies. (Doc. Ex. 6 at 1:15). Once Deputy Majeski starts searching the vehicle, Biederman begins assisting. *Id.* Again, Biederman was following the lead of the deputies who had been their before he arrived and seen things that he had not seen. There is no factual allegation suggesting that Biederman knew or should have known a vehicle search was not reasonable. Partyka and Bauer begin assisting after Biederman and there is also no factual allegation that they knew or

6

should have known a search would be unreasonable.  For these reasons, whether the incident was objectively unreasonable is not relevant to the analysis for the City Defendants.  They arrived late, relied on the deputies and have qualified immunity for the stop.

## II.      THE 2019 STOP DID NOT VIOLATE THE FOURTH AMENDMENT

Plaintiff argues that there was no probable cause for the 2019 stop and therefore the vehicle search was unreasonable.  Plaintiff supports this conclusion by simply claiming the videos do not show what they show. Plaintiff makes no argument regarding the handcuffing or the alleged choking.  Instead, his force claim consists of the use of a forearm against the back of his neck while being handcuffed and pat search. Plaintiff's behavior from the beginning of the stop through being placed in the squad warranted a weapon sweep of his vehicle.

### A. City Defendants had probable cause to stop Plaintiff

Plaintiff claims that he did not admit to tailgating.  In the video, in response to being told he was tailgating Plaintiff states "Dude! You were going 10 miles per hour. I'm trying to make Walgreens before they close." (Ex. 2 at 3:40:20-3:40:24). He also said, in response to being told that he was tailgating them, "you were in my way." (Ex. 3 at 3:42:28).   There is no fact dispute, or overly generous interpretation here.  These statements were admissions. These statements were

and admission that he did it and an explanation as to why he was justified in doing so.

### B. City Defendants did not use excessive force

Plaintiff argues that having a forearm to the back of his neck was excessive because he did not resist or was handcuffed already. The extent of his continued resistance is laid out in the Facts section of Defendant's principal brief. (Doc. 52 at 2-8). But, briefly, the video shows that when ordered to put his hands on the car, he did not move from his spot several feet away from the car and Spies had to grab him and move him over to the car. (Doc 62 at Ex. 2 3:38:45-3:38:52; Ex. 1 at 00:32). The officers continued to struggle with him. He continued to resist while being pat searched, moving his body of the car and twisting his head and torso around. (Ex. 1 at 0:52-0:59).

Plaintiff claims that the videos only show the officers pushing him. This is not true and completely contradicted by the videos. The videos clearly show Knoche being knocked off balance and having to brace himself. (Ex. 1 at 1:44-1:45; 2:30-2:37). They also show Plaintiff moving around and you hear Knoche tell him to get back on the car. (Ex. 1 at 1:49-1:58; 2:30-2:37; Ex. 2 at 3:40:42; Ex. 2 at 3:40:44-3:40:53; 3:41:07). Finally, although he is ordered to put his hands behind his back, Plaintiffs arms make no actual effort to move. (Ex. 1 at 0:39-0:47; Ex. 2 at 3:38:49-3:39:04). Placing a forearm on the back of his neck to keep him in place was

reasonable.   At the very least, Plaintiff has not provided a single case demonstrating that it was not reasonable.  Accordingly, the City Defendants are entitled to qualified immunity.

Plaintiff argues that the video does not show the tint level of the front windows or a crack in the windshield.  This does not matter because the officers already had probable cause to stop him for tailgating. Nonetheless, the video does show that tint. (Ex. 2 at 3:38:46; 3:38:48).  One need only look at other parked cars in comparison to see the tint is dark. (Ex. 2 at 3:39:16)

### C. The vehicle search was reasonable

Plaintiff argues the vehicle search was unreasonable because: the stop was not reasonable; Plaintiff had no weapons on his person; and Plaintiff was placed in the squad.  As explained above, and in its principal brief (Doc. 52), the stop was reasonable. Plaintiff argument fails to address that a protective sweep is reasonable when officers observe unusual conduct which leads them to reasonably believe that criminal activity is afoot and the person may be armed and dangerous. *U.S. v. Stewart*, 631 F.3d 453, 456 (8th Cir. 2011)(citations omitted). Plaintiff fails to address his bizarre behavior, leading the City Officers to be concerned that he may be armed and dangerous.  This argument is fully laid out in City's Memorandum in Support of this motion in Section I.B.1.  Whether he actually had a gun on his person does not render the sweep unreasonable. *U.S. v. Dabney*, 42 F.4th 984, 986-

9

987 (8th Cir. 2022)(holding that protective sweep of vehicle for weapons reasonable even though the defendant had no weapons on his person after a pat search).

Additionally, whether he was handcuffed and removed from his vehicle does not render the stop unreasonable. "[O]nce reasonable suspicion is established, a protective search of a vehicle is allowed even if the occupants have been removed from the vehicle and are handcuffed." *U.S. v. Childers*, 2021 WL 5890662 *11 (Minn. 2021)(citations omitted). And "[t]he level of suspicion necessary to constitute reasonable suspicion ... is considerably less than proof of wrongdoing by a preponderance of the evidence and is obviously less demanding than that for probable cause." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002)

Second, Plaintiff argues that the search exceeded the scope because they "dismantled the interior." (Doc. 75 at 25). Reviewing Knoche's body worn camera, it is clear that they did not dismantle anything. The entire search took less than 4 minutes, and Knoche stopped searching during that time frame repeatedly as he dealt with other people around him and the arrival of other officers. (Ex. 3 at 3:44:11-3:47:05). Knoche began his search by looking in the front seat and compartments in the front door. *Id*. He looked in the center consol, on the floor and checked to see if the panel on the radio was loose. *Id*. As he is doing this a panel from the sealing falls open. *Id*. Officer Pond is heard stating that it just fell open. *Id*. Knocke attempted to push it back into place. *Id*. Then he looks in the

10

backseat area in case Plaintiff threw a weapon back there because the windows were tinted and he couldn't see otherwise.  *Id.*

Knoche only looked in places that could hide a weapon.  He did not exceed the scope of the search.  A valid search extends to closed containers found within the passenger compartment. *U.S. v. Shranklen*, 315 F.3d 959, 960-61 (8th Cir. 2003); see also *United States v. Morgan*, 729 F.3d 1086, 1089–90 (8th Cir. 2013) (concluding that officers had reasonable basis to conduct protective search of passenger compartment of a vehicle, including looking in a "lockbox" large enough to conceal a weapon based on "objectively reasonable concern for officer safety.") The operative questions are whether they searched in a place where a weapon could be hidden, and was that area accessible by the passenger. *U.S. v. Haji*, 2020 WL 4511774 *3 (D. Minn. March 5, 2020).  Here, Knoche and Pond only looked in places that could hide a weapon and that Plaintiff had access to.  Knoche explains on his body worn camera why he checked the backseat as well.  The video makes clear that as they searched a panel at the top of the vehicle dropped open on its own.

At the very least, Knoche and Pond are entitled to qualified immunity for the search of the vehicle.  Plaintiff cites to no on-point and specific case law placing it beyond doubt that the officers could not search the vehicle, and to the extent they

11

did, after Plaintiff exited the vehicle and began walking away after he was pulled over, resisted being placed in handcuffs and began yelling at the officers.

## III.    PLAINTIFF FIRST AMENDMENT CLAIM FAILS

In the 2020 incident, the City Defendants did not make the decision to stop, handcuff, or search Plaintiff.  For the same reason they are entitled to qualified immunity for the Fourth Amendment claims, they are entitled to it for the First Amendment claims.

Plaintiff argues that Defendants Knoche and Spies retaliated against him for his verbal protests.  But his verbal protests were, in actuality, vehement resistance to orders.  Together with his physical resistance, and bizarre behavior of attempting to leave a traffic stop, they created a volatile situation that gave rise to safety concerns by the officers.

## IV.    CONSPIRACY

Plaintiff rests his conspiracy claim for the 2020 incident on the fact that Minneapolis officers came when dispatched, and once they arrived, they assisted the Hennepin County Defendants.  This dearth of factual content is insufficient to render the claim "facially plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That a

12

conspiracy exists here, on these facts, is simply a bald assertion, which must be disregarded by the Court. *Silver v. H&R Block, Inc.*, 405 F.3d, 397 (8th Cir. 1997). The First Amended Complaint does not have a single factual allegation to support any type of conspiracy

The 2019 claim is somehow even weaker.  Plaintiff failed to address the Intracorporate Doctrine, which requires an outside agency with which to conspire. Only Minneapolis Police officers responded to the 2019 incident.  *Wolk v. City of Brooklyn Park*, 107 F.4th 854, 860 (8th Cir. 2024). Plaintiff appears to be arguing a Monell claim here instead.  (Doc. 75 at 36). He claims that Spies and Knoche were acting pursuant to customs and policies of escalating the use of force against non-resistant persons to look for contraband. Id.  That's not a conspiracy, that's a bald assertion of a Monell claim. Although Plaintiff claims that inferred from circumstantial evidence, there is simply no factual allegations to draw an inference from. The First Amended Complaint does not have a single factual allegation to support any type of conspiracy claim here. Accordingly, this claim still fails.

## V.    Monell

Plaintiff alleges Monell theory based on some conclusion that there is a policy and custom of stopping Black people for no reason so that they can search their vehicle.  The First Amended Complaint alleges no actual policy.  If it is a custom, that fails because the First Amended Complaint also alleges no factual detail of

13

any previous incident in which this occurred. Moreover, there is no allegation that the City had any knowledge of this alleged custom.

Plaintiff is really taken with the concept that because officers responding to a traffic stop know what to do it therefore must be a coordinated effort to deprive people of their constitutional rights.  No amount of ingenuity can overcome this logical fallacy of affirming the consequent.  Plaintiff's Monell claim fails here because there were no constitutional violations, the First Amended Complaint has no factual details suggesting any actual policy or custom, and also there is no allegation that the City had notice of any custom and failed to do anything to prevent it from happening again.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully request that the Court grant its motion for judgment on the pleadings.

Dated:  April 28, 2026

KRISTYN ANDERSON
Minneapolis City Attorney
By

*/s/ Tracey N. Fussy*
TRACEY N. FUSSY (#311807)
Assistant City Attorney
City Hall, Room 210
350 South 5th Street
Minneapolis, MN  55415
(612) 673-2254
tracey.fussy@minneapolismn.gov

*Attorneys for Defendants Jacob R. Spies, Richard L. Knoche, Kyle A. Pond, John K. Biederman, Aaron J. Pearson, Tony J. Partyka, Benjamin M. Bauer and the City of Minneapolis*

15